**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 16, 2020**

# In the Court of Appeals of Georgia

A20A1371. NAJARIAN CAPITAL, LLC v. MILFORD, et al.
A20A1395. CITIBANK, N. A., AS TRUSTEE FOR CMLTI ASSET
TRUST v. MILFORD.

MARKLE, Judge.

After Sherrie Bailey Milford's home was foreclosed on and sold by CitiBank, N. A. (CitiBank), Milford filed suit against CitiBank, and the purchaser, Najarian Capital, LLC (Najarian), for wrongful foreclosure, rescission, and damages. Following a bench trial, the trial court found in Milford's favor, rescinding the foreclosure sale and returning title to the home to her. CitiBank and Najarian now appeal, asserting numerous errors, including that the trial court erred in rescinding the foreclosure sale. Najarian also claims the trial court erred by dismissing its counterclaim for a writ of possession and damages for wrongful possession, and its

contingent cross-claim against CitiBank for breach of contract. Because we find that the trial court erred in rescinding the foreclosure sale, we must reverse.

> We apply a de novo standard of review to any questions of law decided by the trial court; factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.

(Citation omitted.) *ALA Constr. Svcs., LLC v. Controlled Access*, *Inc.*, 351 Ga. App. 841, 841-842 (833 SE2d 570) (2019).

So viewed, the evidence shows that, in June 2007, Milford executed a security deed in favor of Bank of America, encumbering the home as security for a mortgage loan in the amount of $101,099. The security deed was last assigned to CitiBank as the mortgage lender, with Fay Servicing, LLC (Fay) acting as the servicer. The security deed contains several provisions that govern the conduct of the parties, including how payments are received; what notices are required and how they are to be sent; what actions are required to cure any default; the requirements for reinstating the loan after default and acceleration of the debt; and the lendor's ability to invoke its power to foreclose and sell the home following default.

Milford failed to make her payments in June, July, and August 2018. Fay sent Milford a notice of default, dated August 9, 2018, via first class mail, informing her

that she was in default on the loan and giving her until September 13, 2018, to cure it. About 10 days later, Fay called Milford to discuss the status of her account and the default. Nevertheless, Milford failed to cure the default by the September deadline.

Fay then sent Milford a mortgage statement, dated October 10, 2018, again informing her of the default and continued delinquency, and seeking payment in the amount of $2,366.17, which reflected overdue payments in the amount of $1,909.14, plus outstanding fees, with a due date of November 1, 2018. The statement advised Milford that this amount was needed to bring the account current, and that failure to do so could result in foreclosure. Milford did not make the required payment by the deadline.

On October 23, 2018, Fay sent Milford a notice of acceleration by certified mail, and attached the notice of sale of the home. The letter was delivered to the house on October 27, 2018.[1]

Thereafter, Fay sent Milford another mortgage statement, dated November 10, 2018, seeking payment in the amount of $3,082.64, with a due date of December 1, 2018, in order to reinstate the loan. The mortgage statement further informed Milford

---

[1] A notation in the letter's tracking history indicated that no one was present at the home to accept it, but that notice was left at the address; when the letter was not retrieved from the post office it was returned to sender.

that the balance due on her loan had been accelerated, with the accelerated amount due of $61,083.11 to pay it off, but that it would accept the lesser amount due of $3,082.64 to bring the account current and reinstate the loan. Again, the mortgage statement informed Milford that failure to bring her account current could result in foreclosure. Milford subsequently sent payment in the amount of $2,366.17 by check dated November 13, 2018, which Fay did not receive until November 26, 2018.

After receiving this payment, Fay sent Milford a letter, delivered on December 21, 2018, informing her that it could not accept her payment because the account was in active foreclosure status, that it could not accept less than the full amount due on the loan, and that it was returning the funds to her. According to CitiBank and Fay's account history, Milford did not pay the reinstatement amount on the loan, and CitiBank then foreclosed on the property. On December 4, 2018, it sold the property at a foreclosure sale to Najarian for $75,500. A few days later, Milford received a letter from Najarian posted on her front door, advising her to vacate the premises because the home had been sold at a foreclosure sale. In late December 2018, the deed conveying the property to Najarian was recorded.

Milford remained in the home after the foreclosure sale, and Najarian filed a dispossessory action against her in the magistrate court. Milford then sought a

restraining order, which the trial court granted, to prevent Najarian from dispossessing her from the property during the pendency of the action. Milford also moved the trial court to deposit into the court's registry $3,096.89, the sum needed to date to bring her account current, plus her mortgage amount of $447 to be paid monthly until further order of the trial court. The trial court granted the motion to deposit the funds, but required Milford to pay $600 per month to be held until further order of the court.[2]

Milford subsequently filed a complaint for damages against CitiBank and Najarian, asserting claims of wrongful foreclosure and breach of contract against CitiBank, and for attorney fees under OCGA § 13-6-11 against both CitiBank and Najarian. In her complaint, Milford acknowledged that she had fallen behind in her mortgage payments beginning in June 2018, but contended that she did not receive the notice of default or notice of acceleration, and that, despite her effort to pay the arrearage, CitiBank acted in bad faith by refusing payment and foreclosing on her home. Milford further asserted that she did not receive notice that the arrearage

---

[2] Milford failed to make the required payments into the court's registry in August, September, and October of 2019.

amount she paid was inadequate, that she remained in default, or that CitiBank was proceeding with a foreclosure sale, until after the foreclosure occurred.

CitiBank answered that Milford did not pay the entire amount in a timely fashion to cure her default, and that it sent notice of Milford's default in accordance with applicable law. CitiBank later amended its answer to acknowledge that Milford did submit a check in the amount of $2,366.17, but denied that this amount cured the arrearage prior to the foreclosure sale.

Najarian answered and counterclaimed, seeking a writ of possession and damages for Milford's wrongful possession of the home. Najarian also filed a cross-claim against CitiBank for breach of the sales contract in the event Milford prevailed on her claims for wrongful foreclosure. Najarian further moved the trial court for an order compelling Milford to pay into the court's registry the sum of $1,200 per month for rent, plus back rent, for the duration of time Milford remained in possession of the home until resolution of the suit.

Following a bench trial,[3] the trial court found in favor of Milford and against CitiBank, rescinding the foreclosure sale and restoring title to the property to Milford. The trial court further found that Najarian did not act in bad faith regarding the foreclosure sale and therefore it dismissed Milford's claims against Najarian, as well as Najarian's counterclaim against Milford. The trial court required that the funds Milford paid into the court's registry be tendered to CitiBank and applied to cure the default, bring the account current, and reinstate the loan. In reaching this conclusion, the trial court found that CitiBank violated the terms of the security deed because Milford did not receive timely notice of the default, acceleration, or foreclosure. The trial court further denied Najarian's contingent cross-claim against CitiBank. It found instead that Najarian was only entitled to a return of the purchase price plus interest from CitiBank.

The trial court certified the orders for immediate review and stayed enforcement of them pending appeal. This Court granted the applications for interlocutory review, and these timely appeals followed.

---

[3] Although Milford was represented by counsel when she filed her complaint, she proceeded pro se at the trial. Even though Milford was eventually sworn as a witness, the trial court initially allowed her to testify and present evidence, over defense objections.

7

1. CitiBank argues that the trial court erred in rescinding the foreclosure sale because it did not breach the terms of the security deed. Specifically, CitiBank argues the trial court erred because (a) it sent the required notice of default and acceleration and sale of the home; (b) Milford's November 13 payment was insufficient to reinstate the loan under paragraph 19 of the security deed; and (c) the sale of Milford's home did not constitute a wrongful foreclosure sale.[4] Because the evidence shows that Milford had sufficient notice of the default, but failed to cure the arrearage in such a manner as to prevent the foreclosure on her home, the trial court erred in rescinding the foreclosure.

> Georgia law requires that powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised. This includes a mandate that notice of the initiation of proceedings to exercise a power of sale be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. And when a foreclosing creditor fails to comply with the

---

[4] CitiBank also raises other enumerations of error, including that the trial court erred in refusing to swear Milford in as a witness at trial; in denying its oral motion for involuntary dismissal; in awarding Milford punitive and compensatory damages and attorney fees under OCGA § 13-6-11; and in finding that the funds Milford deposited into the court's registry were sufficient to reinstate the loan. However, in light of our conclusion herein, we need not address these arguments.

8

statutory duty to provide notice of sale to the debtor in accordance with OCGA § 44-14-162 et seq., the debtor may either seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure.

(Citations and punctuation omitted.) *James v. Bank of America, N. A.*, 332 Ga. App. 365, 366-367 (1) (772 SE2d 812) (2015) (physical precedent only); see also OCGA §§ 23-2-114; 44-14-162.2(a).

> To assert a viable claim for wrongful foreclosure, a plaintiff must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages. The legal duty imposed upon a foreclosing party under a power of sale is to exercise that power fairly and in good faith.

(Citations and punctuation omitted.) *Wells Fargo Bank, N. A. v. Molina-Salas*, 332 Ga. App 641, 642 (1) (774 SE2d 712) (2015). With these principles in mind, we turn to CitiBank's specific arguments.

(a) *Required notice of default, acceleration, and sale.*

CitiBank argues that it did not breach the terms of the security deed with respect to sending Milford the required notices of default and of acceleration and sale of the home. We agree.

9

A security deed containing a power of sale and a deed to secure debt are matters of contract, the provisions of which are controlling as to the rights of the parties, and will be enforced as written. See *Roberts v. JP Morgan Chase, Nat. Assoc.*, 342 Ga. App. 73, 76 (1) (802 SE2d 880) (2017). "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."(Citation omitted.) Id. Thus, CitiBank's actions were governed by the terms of the security deed, and the evidence shows that CitiBank did not breach those terms.

As set forth in the security deed, prior to acceleration of the loan, CitiBank was required to provide Milford with notice of the default; what action was required to cure the default; the date within which to cure the default; and that failure to cure the default would result in acceleration of the note and sale of the property. The deed further stipulates that, if the lender invokes the power of sale, it shall give notice of the sale by public advertisement as prescribed by applicable law. The security deed also stipulates that any notice to the borrower shall be in writing sent by first class mail to the property address, and acknowledges that any notice requirements under the applicable law would also satisfy the notice requirement under the security deed.

In its order, the trial court did not identify a specific provision of the security deed that CitiBank breached, but rather concluded that CitiBank submitted no proof that it sent the required notice of default via certified mail. It further indicated that, with respect to the notice of acceleration, the manner in which the notice was provided did not allow Milford time to prevent the acceleration and the subsequent foreclosure. However, the evidence shows otherwise.

At trial, CitiBank submitted evidence that it sent Milford the notice of default and the notice of acceleration. Both notices were sent in accordance with the terms of the security deed, and complied with OCGA § 44-14-162.2.[5] Milford acknowledged that she received the required notice of default, but nevertheless failed to cure it by the September deadline. With respect to the notice of acceleration and sale, which Milford claims she did not receive, her actual receipt of the letter is immaterial as long as CitiBank has shown that it was sent in accordance with applicable law. *Parks v. Bank of New York*, 279 Ga. 418, 420 (614 SE2d 63) (2005) (when the grantee mails notification of the sale under power correctly addressed to

---

[5] OCGA § 44-14-162.2 provides that notice is to be given to the debtor in writing and sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address; and that the notice requirement is deemed satisfied as of the postmark date.

11

the grantor of the security deed in accordance with the provisions of OCGA § 44-14-162.2, actual receipt, or want of receipt, by the grantor is immaterial to the grantee's right to sale under power); see also *McCollum v. Pope*, 261 Ga. 835 (411 SE2d 874) (1992).

Accordingly, the evidence shows that CitiBank complied with the relevant provisions of the security deed, and applicable law, in providing Milford notice of default, acceleration, and sale of the home.

(b) *Conditions for reinstatement*.

CitiBank next argues that the trial court erred in finding that it violated the terms of the security deed with regard to reinstatement, and that Milford's November payment was sufficient to reinstate the loan. Again, we agree.

Under the terms of the deed, the borrower retains the right to reinstate the security instrument after acceleration of the loan any time prior to five days before the sale of the property by paying the lender all sums due as if acceleration had not occurred, by curing the default, and by paying all expenses incurred as a result of enforcement of the security instrument's terms, including reasonable attorney fees.

The trial court concluded that Milford satisfied the conditions for reinstatement because she made a good faith attempt to reinstate the loan and cure the default by

paying the amount stated in the October 2018 statement. To the contrary, the record shows that Milford did not pay all sums due to reinstate the loan.

What both Milford and the trial court appear to confuse is that the $2,366.17 amount required by the October statement was only to *cure* the default. It did not include the amount necessary to reinstate the loan – namely the late fees. After receiving the October statement, Milford was sent a subsequent statement in November 2018, after the notice of acceleration, which required a reinstatement amount of $3,082.64, including the amount due from the October statement, late fees, and attorney fees. Thus, Milford's November payment of $2,366.17 was not only late, but also failed to include the additional sums required.[6] And because the amount was insufficient, CitiBank reserved the right under the security deed to reject any sum short of the full amount necessary to bring the loan current. The evidence shows that Milford never called Fay to discuss reinstating the loan, nor did she ever pay a reinstatement amount prior to the foreclosure.

---

[6] Notably, the notice of default reflects that Milford had overdue payments as of the date of the statement in the amount of $1,909.14, that she had already been assessed late charges, and that she had been in default since June of 2018. Moreover, Milford admitted that she was aware she has been in default on her mortgage.

13

Accordingly, the trial court erred in finding that Milford met the conditions to reinstate the loan.

(c) *Wrongful foreclosure*.

Finally, CitiBank argues that the trial court erred in finding that the sale of Milford's home constituted a wrongful foreclosure sale. Milford argued at trial that CitiBank wrongfully foreclosed on her home because she did not receive the required notice of acceleration and sale as provided in the security deed, and the trial court agreed. However, these allegations are insufficient to establish a wrongful foreclosure.

"When a power of sale in a security deed is exercised all that is required of the foreclosing party is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith." (Citation and punctuation omitted.) *Caesar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 532 (2) (a) (744 SE2d 369) (2013); see also OCGA § 44-14-162 (a).

Here, Milford made no allegations that the property was not advertised and sold according to the terms of the security deed. And, as set out above, although the trial court found that Milford did not receive notice of the acceleration and sale,

actual receipt of the notice was not required. *Parks*, 279 Ga. at 420. The trial court did not make the requisite finding that CitiBank violated the foreclosure statute in the manner it exercised its power of sale. See *McCarter v. Banks Trust Co.*, 247 Ga. App. 129, 132 (2) (543 SE2d 755) (2000). Accordingly, the trial court erred in finding that CitiBank wrongfully foreclosed on Milford's home, and we must reverse the trial court's order rescinding the sale.[7]

2. In light of our conclusions in Division 1, we need not address CitiBank's remaining enumerations of error.

*Case No. A20A1371*

3. In this appeal, Najarian raises several enumerations of error. Specifically, it argues that the trial court erred in rescinding the foreclosure sale; rescinding the deed under power; restoring title to Milford; and denying it benefit-of-the-bargain damages against CitiBank on its cross-claim. In light of our conclusion in Division 1 that the trial court erred in rescinding the foreclosure, we need not address these enumerations of error related to the foreclosure. Thus, we now turn to its remaining arguments on

---

[7] We note that rescission is not the proper remedy for a wrongful foreclosure, as Milford must seek to set aside the foreclosure or seek damages. See *James v. Bank of America, N. A.*, 332 Ga. App. at 366-367 (1) (772 SE2d 812) (2015) (physical precedent only).

15

appeal, namely that the trial court erred in dismissing Najarian's counterclaim against Milford for a writ of possession and by denying it damages for imputed rent for Milford's wrongful possession of the home following the foreclosure sale.

After lawful foreclosure of the deed, "[Milford's] legal right to possession ended when [Najarian] became the legal title holder and [Milford], as a tenant at sufferance, was subject to being summarily dispossessed. (Citation and omitted.) *Bradley v. JPMorgan Chase Bank*, 289 Ga. App. 704, 705 (658 SE2d 240) (2008). Because we find that the trial court erred in rescinding the foreclosure sale, we necessarily find that Milford was subject to being dispossessed. In order for Najarian, as the grantee of a deed under power, to dispossess Milford from the home, it was required to prove that a demand for the property was made. See *Hyman v. Leathers*, 168 Ga. App. 112, 115 (4) (308 SE2d 388) (1983); see also *Ranger v. First Family Mortg. Corp. of Fla.*, 176 Ga. App 715, 716 (3) (337 SE2d 388) (1985); OCGA § 44-7-50 (a).

At trial, Najarian introduced into evidence its deed under power, as well as evidence that it made a demand for possession of the property from Milford, which Milford did not dispute. The record further shows that following the foreclosure sale, Milford remained in the home and even sought legal measures to prevent Najarian

16

from dispossessing her from the property during the pendency of this action. As discussed above, CitiBank lawfully foreclosed on the home, and thus we must reverse the trial court's order denying possession of the property to Najarian.

Furthermore, "[a] tenant at sufferance is liable for the reasonable rental value of the premises." (Citation omitted.) *Britton v. Federal Nat. Mortg. Assn.*, 307 Ga. App. 581, 582 (2) (705 SE2d 682) (2011). And, pursuant to OCGA § 44-7-56, the trial court may require payment of rent into the court's registry pending appeal.

Here, the trial court ordered Milford to pay rent into the court's registry, and Najarian introduced evidence at trial showing that Milford failed to fully comply. While Milford did pay $7,296.89 into the registry, which the trial court ordered to be paid to CitiBank to cure the default, CitiBank sought no damages at trial. In light of our reversal of the trial court's rescission of the foreclosure sale, CitiBank is not entitled to these funds, and the trial court's order to that effect was error.

Najarian, however, introduced uncontradicted evidence at trial that the fair market rental value of the property was $1,200 per month as of the date of the foreclosure. Accordingly, we remand the case to the trial court with instructions to render judgment in Najarian's favor as to damages for imputed rent for Milford's

17

wrongful possession of the home, and for determination as to the total amount of those damages consistent with this opinion.

In sum, in Case No. A20A1395, we reverse the trial court's order rescinding the foreclosure. In Case No. A20A1371, we reverse the trial court's order denying Najarian possession of the home, and remand the case for the trial court to enter judgment in Najarian's favor regarding same, and for determination as to the amount of damages for imputed rent to which Najarian is entitled.

*Judgment reversed and case remanded with direction in Case No. A20A1371. Judgment reversed in Case No. A20A1395. Reese, P. J., and Colvin, J., concur.*